**WARD TRUCKING CORP., Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents,**

**R.A.N. Trucking Company, Intervenor.**

**No. 80–1451.**

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1980.

Decided Dec. 1, 1980.

---

Henry M. Wick, Jr., Donald J. Balsley, Jr., Pittsburgh, Pa. (argued); Wick, Vuono & Lavelle, Pittsburgh, Pa., of counsel, for petitioner.

Richard A. Allen, Gen. Counsel, Henri F. Rush, Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D.C., Dennis Starks (argued); Sanford M. Litvack, Asst. Atty. Gen., Robert B. Nicholson, Asst. Chief, Margaret Halpern, Dept. of Justice, Washington, D.C., for respondents.

Daniel C. Sullivan (argued); Gregory A. Stayart, L. Steven Platt, Chicago, Ill., Sullivan & Associates, Ltd., Chicago, Ill., of counsel, for intervenor.

Before ADAMS and SLOVITER, Circuit Judges, and KNOX, District Judge.[*]

## OPINION OF THE COURT

PER CURIAM:

Ward Trucking Corporation has filed a petition to set aside a decision of the Interstate Commerce Commission (ICC) which granted temporary rights to R.A.N. Trucking Company (R.A.N.) to transport merchandise from areas in and around New York City to various points in Western Pennsylvania, Ohio, Indiana and West Virginia. The respondents are the ICC and the United States. Intervenor status was granted to R.A.N. since its interest is substantially affected by the outcome of this litigation.

*STATEMENT OF FACTS*

For over one year R.A.N. had been transporting general freight originating in the New York City area to certain points in Western Pennsylvania and Ohio through an "interline" arrangement with another common motor carrier, Crown Motor Freight. R.A.N. was also moving goods to points in Indiana, Southern Ohio, and West Virginia as the result of a further interline hookup with its wholly-owned subsidiary, Povaro Trucking. Crown then moved its inspection site to Patterson, New York. As a result, in order to continue the interline, R.A.N. would have had to increase its total linehaul distance by 10 per cent. Crown then proceeded to cancel the interline service with R.A.N. At approximately the same time Povaro sought to withdraw from its interline arrangement. R.A.N. thereupon applied to the ICC for temporary, emergency authority to serve the affected areas directly. Specifically, R.A.N. sought to serve points in Western Pennsylvania, Northeastern and Southwestern Ohio, Indiana and

---

* Honorable William W. Knox, United States District Judge for the Western District of Pennsylvania, sitting by designation.

West Virginia. Without such permission, R.A.N. asserts it would have lost $25,000 per week in gross revenues, and the financial base of its operations would have been in jeopardy. In addition, it claims that many members of the public who relied on R.A.N.'s shipping services would be seriously inconvenienced unless the application for temporary authority was granted.

As support for its request, R.A.N. submitted an interline traffic study and two certificates from customers in Ohio served by the R.A.N./Crown interline. The traffic study showed that R.A.N. made scores of trips into the areas affected by the application during the one year course of the study. Although the majority of the trips in the study were to Western Pennsylvania and Northern Ohio, the study revealed that at least some trips had been made by R.A.N. to Wheeling, West Virginia, and a few cities in Indiana.

R.A.N.'s application for temporary authority was protested by six motor carriers, including Ward Trucking. Ward's protest alleged that R.A.N.'s application conflicted in part with the authority held by Ward. The protestants pointed out that other common carriers already serviced the area, and that the grant of temporary authority to R.A.N. would have an adverse impact on the ability of the protesting firms to continue to offer adequate service. The protestants also declared that the burden of demonstrating an immediate and urgent need rested upon R.A.N. Because some of the six carriers already served the area, they argued that R.A.N. could not meet this burden.

In an order entered on October 23, 1979, the ICC found an immediate and urgent need for the service sought by R.A.N. that could not adequately be met by existing carriers. The ICC granted the temporary authority in its entirety. An appeal was taken to the ICC, but its original ruling was affirmed by an order entered on February 20, 1980. Ward now takes the present ap-

peal to this Court, complaining of the grant of the temporary authority.

*DISCUSSION*

The standard for an appellate court when reviewing a grant of temporary authority by the ICC is to insure that the administrative action was not arbitrary and capricious and that it was supported by "some evidence." *East Texas Motor Freight Lines v. U. S.*, 593 F.2d 691 (5th Cir. 1979). *Accord, Barnes Freight Lines, Inc. v. ICC*, 569 F.2d 912 (5th Cir. 1978). This standard of review is clearly distinguishable from appellate review of the grant of permanent authority, where the finding must be supported by "substantial evidence on the record taken as a whole." Administrative Procedure Act, 5 U.S.C. § 706. Agency decisions relating to grants of temporary authority, in contrast to grants of permanent authority, are exempt from the requirements of the Administrative Procedure Act. *Barnes* at 920. The agency is specifically authorized to take action in its discretion and without hearings or other proceedings. *Id.*, § 210a. Interstate Commerce Act, 49 U.S.C. § 310a. The reason for this approach, of course, is that the situation in question is an emergent one, and that for the ultimate resolution of the request a final hearing will be conducted.[1] Thus, our assignment at this time is to determine whether there is "some" evidence to support the ICC's finding that there was an "immediate and urgent need," as defined in 49 CFR § 11.31.4(b)(2), to support the grant of temporary authority to R.A.N.

Evidence submitted by R.A.N. as support for the temporary grant of authority included (1) the very existence and termination of the interline arrangement between R.A.N. and Crown; (2) a lengthy traffic study of interline traffic movements during the period from July 3, 1978 to December 29, 1978; and (3) "Certificates of Support" from two of R.A.N.'s customers. In opposition to the sufficiency of this evidence, Ward advances an array of arguments:

---

1. R.A.N.'s request for permanent authority to serve the area encompassed by the temporary grant is now pending before the ICC. The Commission's decision in that matter will be subject to the substantial evidence standard of review.

Specifically, Ward claims that (1) the grant of temporary authority was impermissibly broader than the geographic scope of the old R.A.N./Crown interline; (2) the interline traffic study should have been more carefully scrutinized by the ICC because of Ward's charge that R.A.N. is under investigation for unspecified "unlawful operations," and (3) the two supporting statements from customers of R.A.N. are quantitatively inadequate, and in any event too vague to meet the requirements for supporting statements that are set forth in 49 CFR § 1131.2(c)(1)–(11).

■ The existence of the interline arrangement between R.A.N. and Crown and the additional hookup with Povaro in and of itself represents "some evidence" in support of the decision of the ICC. Bearing in mind that it is not our task to re–weigh the evidence in the type of appeal now before us, the existence of the interline arrangements, which provided service to the entire area contemplated by the temporary permit issued to R.A.N., suggests that the authority is at least needed and desired by those shippers that the arrangement already serves. Need is established because of the economic viability of the route, and because the cessation of the route could create problems for those companies that now depend on the services. Once such need is established, it is within the province of the ICC to determine the immediacy and urgency of maintaining the continuity of the services.

Petitioner argues that the grant of authority was geographically too broad and as such constituted an arbitrary and capricious act by the ICC. Although it is true that the interline traffic study did not refer to trips to each of the cities and counties mentioned in the special permit, it did refer to a large number. It also showed the presence of some service by R.A.N. to the general geographic area, including West Virginia, Indiana, and Southern Ohio. Demonstration of service to every city within the scope of the permit is not necessary to support an emergency temporary grant of authority. A need to serve an area, at least temporarily, can be inferred from the existence of a few trips to representative destination points within that area. Moreover, the existence of the interline connection with R.A.N.'s subsidiary Povaro, suggests a need for continued service to all areas mentioned in the grant of authority. Thus, we cannot say, under the circumstances, that the interline exhibit did not constitute "some evidence" in support of the petition.

Ward also claims that the ICC did not scrutinize the underlying documentation as fully as it should, in view of its charge that there is pending an ICC investigation of R.A.N. for unlawful operations. A board–brush charge of some kind of wrongdoing such as we have here, should not, without more, preclude an emergency grant. For such a contention to be accorded substantial weight, Ward would have to demonstrate how the traffic study was tainted. The general assertion of wrongdoing does not allege any facts whatsoever which would link the alleged wrongdoing to the traffic study itself.[2]

In support of its objection to the sufficiency of the statements used to demonstrate the need for continued service by R.A.N., Ward cites ICC cases where the courts have considered substantially more statements by customers than the two submitted by R.A.N. *See, e. g., East Texas Motor Freight Lines,* supra; *Garrett Freightlines, Inc. v. U. S.,* 540 F.2d 450 (9th Cir. 1976); *Georgia–Florida–Alabama Transportation Co. v. ICC,* 614 F.2d 1078 (5th Cir. 1980). Further, Ward maintains that the actual *form* of the two supporting statements proffered by R.A.N. renders them inadequate when compared to the requirements of 49 CFR 1131.2(c)(1)–(11). Although there are slight deficiencies in the form of the statements, and although a greater number of statements might have

---

2.  *Cf., Barnes,* supra, in which the Fifth Circuit reversed an ICC grant of temporary authority where the Commission based its decision in part on perjured testimony of an officer of the applicant, and where the president of the applicant refused to submit to cross–examination after the perjury of the officer was disclosed.

been desirable for further substantiation of the application, these shortcomings are not fatal, because when the two statements are considered together with the other evidence submitted it is apparent that "some" evidence supports the ICC's action.

*CONCLUSION*

The petition to set aside the decision and order of the ICC will be denied.